HEATON PENINSULAR BUTTON-FASTENER CO. v. DICK et al.[1]

(Circuit Court, N. D. Illinois, N. D.   July, 1892.)

No. 870.

INJUNCTION — PROCUREMENT OF BREACH OF CONTRACT — CONTRIBUTORY INFRINGEMENT OF PATENT.

A bill alleged that complainant, owning patents for button-fastening machines, had sold the patented machines upon condition that they should be used only with fasteners made by complainant from the sale of which a profit was derived, and that defendants were manufacturing similar button fasteners, capable of and intended by them for use in complainant's machines, and were inducing purchasers of those machines to use such fasteners therein, to the exclusion of complainant's fasteners; and it prayed that defendants be restrained from making for sale, selling, or offering or advertising for sale, any fasteners, intended for use or capable of being used in the machines sold by complainant under such conditions, and from persuading or inducing vendees of such machines to purchase or use in such machines any fasteners other than those made and sold by complainants. On the bill and affidavit substantiating its charges, complainant moved for a preliminary injunction. Defendants demurred to the bill, and opposed the motion for injunction, but subsequently their counsel

[1] Revised report. For former report, see 52 Fed. Rep. 667.

withdrew from the case. *Held,* that orders should be entered, as upon default, overruling the demurrer and allowing an injunction, pursuant to the prayer of the bill.

In Equity. Suit by the Heaton Peninsular Button-Fastener Company against Joseph C. F. Dick and others to restrain defendants from procuring or inducing purchasers of button-fastening machines from complainant to violate their contracts with complainant entered into on the purchase of such machines. Heard on general demurrer to the bill and on motion for preliminary injunction. Defendants' counsel afterwards withdrew from the case. Demurrer overruled, and injunction granted.

The facts alleged in the bill were in general purport and substance as folows: Complainant is the owner of several letters patent granted for improvements in button-setting machines, the validity of which has been sustained twice in the United States courts, and under these patents manufactures and sells button-fastening machines called "Peninsular" machines. These machines are sold outright to the users thereof, with the condition that the machines shall be used only with button fasteners made and sold by the complainant, and known as "Peninsular" fasteners. This condition is expressed on the bills of sale on tags attached to each machine, and also by a caution plate attached to each machine, which reads: "This machine is sold and purchased for use only with fasteners made by the Heaton Peninsular Button-Fastener Company, to whom the title to said machine immediately reverts upon violation of this condition of sale." The price asked and received for each Peninsular machine is an amount barely covering the cost of manufacture and transportation. The complainant seeks its royalty in the profit derived from the sale of Peninsular fasteners, and derives benefit from the patented inventions embodied in the Peninsular machines in this and no other way. The Peninsular machine was and is the only efficient machine in use capable of setting the Peninsular fastener. In 1890 the defendants entered into the manufacture of a metallic button fastener, called by them the "Shoe Dealers' Staple," identical in all essential respects with the Peninsular fastener, capable of use in Peninsular machines, and intended by the defendants for such use. The defendants, from the beginning of the manufacture of Shoe Dealers' Staples, by solicitation and advertisement, procured and persuaded large numbers of users of Peninsular machines to use in those machines the Shoe Dealers' Staple, to the exclusion of the Peninsular fastener, which by their agreement and acquiescence in the condition appended to the sale of Peninsular machines they were under obligation to use. Thus the complainant, since 1890, was deprived of the benefits accruing to it from the sale of Peninsular fasteners, and ceased to obtain the income which it should have received from the use of many Peninsular machines, while the defendants diverted to themselves the profits arising out of the use of their Shoe Dealers' Staples, which never were capable of any use except in Peninsular machines.

The bill prayed, among other things: "That the defendants may be perpetually enjoined and restrained from directly or indirectly procuring or attempting to procure, inducing or attempting to induce, or causing, any breach or violation of the contracts, or of either or any of the contracts, now or hereafter existing or subsisting between your orator and the vendees, or either or any of the vendees of button-setting machines sold by your orator, or to be sold by your orator, under condition that such vendees shall use in the button-setting machines so sold no other button fasteners than those made and furnished by your orator; and especially from directly or indirectly making or causing to be made for sale, selling or causing to be sold, or offering or causing to be offered for sale, to any person or persons, firm or firms, corporation or corporations whatsoever, any button fasteners intended for use, or adapted for use, or capable of being used, in button-setting machines manufactured by your orator and sold by your orator under the conditions aforesaid; from directly or indirectly persuading or inducing the vendees, or either or any of the vendees of button-setting machines, sold by your orator and held by such vendee

or vendees under the conditions aforesaid, to purchase any button fasteners designed or adapted for use in such machines, other than the button fasteners made and sold by your orator for use in such machines by the possessors thereof in conformity to the conditions aforesaid under which said machines are held; and from advertising or causing to be advertised for sale any button fasteners intended or adapted for use in button-setting machines manufactured and sold by your orator, and held by purchasers under the conditions aforesaid, other than the button fasteners made and sold by your orator to be used in such machines by the possessors thereof in conformity to the conditions aforesaid, under which such machines are held; and from publishing or causing to be published any offer, promise, or inducement, designed or intended to procure the vendees, or either or any of them, of button-setting machines manufactured and sold by your orator, and held and used subject to the conditions of sale aforesaid, to use or to purchase for use in such button-setting machines, in violation of the contracts, or either or any of them, wherein such vendees have been and are bound to your orator as aforesaid, any button fasteners other than those made and furnished by your orator for use in the said button-setting machines."

Upon the bill, and upon affidavits stating facts substantiating its allegations of fact and charges in detail, complainant moved for a preliminary injunction. Defendants demurred to the bill generally, and opposed the motion for injunction.

Hamlin, Holland & Boyden, (James H. Lange and Odin B. Roberts, of counsel,) for complainant.

(1) Action lies for maliciously procuring a breach of contract, whereby a contracting party is injured. Any one who interferes with a contractual relation, to benefit himself at the expense of the contracting party, does so maliciously, within the intent and meaning of the law. Lumley v. Gye, 2 El. & Bl. 216; Bowen v. Hall, 6 Q. B. Div. 333; Haskins v. Royster, 16 Amer. Rep. 780; Bixby v. Dunlap, 22 Amer. Rep. 475; Walker v. Cronin, 107 Mass. 555; Gunter v. Astor, 4 Moore, C. P. (N. S.) 12; Shepard v. Wakeman, Sid. 79; Keeble v. Hickeringail, Holt, 14, 17, 19; Carrington v. Taylor, 11 East, 571; Tarleton v. McGawley, Peake, 270; Green v. Button, 2 Cromp. M. & R. 707; Hart v. Aldridge, Cowp. 54; Dudley v. Briggs, 141 Mass. 582, 6 N. E. Rep. 717; De Fransesco v. Barnum, 39 Wkly. Rep. 5; Benton v. Pratt, 2 Wend. 385. The only case not in harmony with the doctrine as expressed is Chambers v. Baldwin, (Ky.) 15 S. W. Rep. 57.

(2) A patentee may parcel his monopoly in any way he sees fit according to the natural subdivision of his monopoly into the three exclusive rights to make, to sell, and to use. It rests with the patentee to define the limitations under which he allows others to enjoy his invention. Dorsey, etc., Rake Co. v. Bradley Manuf'g Co., 12 Blatchf. 202; Adams v. Burke, 17 Wall. 453.

(3) When a patented article is sold subject to an express restriction as to its use, disregard of such limitation is an infringement of the patent, and all assignees or vendees of the article are charged with constructive notice of the restriction. Hawley v. Mitchell, 4 Fish. Pat. Cas. 388, affirmed 16 Wall. 544; Burr v. Duryee, 2 Fish. Pat. Cas. 275.

(4) The circumstance that the structure embodying the patented invention is sold absolutely by the patentee is not inconsistent with a continuing control over the use of the structure, to be exercised by the patentee. Tie Co. v. Simmons, 3 Ban. & A. 320; Tie Supply Co. v. Bullard, 4 Ban. & A. 520; Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. Rep. 52; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 40 Fed. Rep. 577.

(5) It is generally true that if by contract or covenant a condition or servitude is attached to the ownership of property which is the subject-matter of the covenant, and which is of such peculiar value that the covenantee can invoke the aid of a court of equity to enforce the contract or covenant specifically as against the obligor or covenantor, then to that property in the hands of a purchaser from the obligor or covenantor, with notice of the condition or servitude, the equity raised in favor of the covenantee by the cove-

nant adheres, and prevails against such a purchaser. Tulk v. Moxhay, 2 Phil. Ch. 774; Western v. MacDermott, L. R. 2 Ch. App. 72; Whitney v. Railway Co., 11 Gray, 359; Clements v. Welles, L. R. 1 Eq. 200; De Mattos v. Gibson, 4 De Gex & J. 276; Clark v. Flint, 22 Pick. 231.

(6) The complainant's licensees, the users of Peninsular machines, by dealing with those patented machines in a manner contrary to the conditions and limitations of the license, infringe the patents for the inventions embodied in the machines. Cohn v. Rubber Co., 3 Ban. & A. 568; Starling v. Plow Works, 32 Fed. Rep. 290; Fetter v. Newhall, 17 Fed. Rep. 841; Willis v. McCullen, 29 Fed. Rep. 641.

(7) One who assists in an infringement of patent rights by designedly furnishing to the actual infringer the means by which his infringement is effected, and for the intended purpose of promoting such infringement, is a contributory infringer, and is liable to the extent of his contribution to the infringement. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 40 Fed. Rep. 577.

(8) Any act, done with intent to contribute directly to an infringement of patent rights, is wrongful, and will be enjoined by a court of equity, although in itself, and considered apart from its intended purpose, such act might be lawful. Wallace v. Holmes, 9 Blatchf. 65; Holly v. Machine Co., 18 Blatchf. 327, 4 Fed. Rep. 74; Bowker v. Dows, 15 O. G. 510; Travers v. Beyer, 26 Fed. Rep. 450; Willis v. McCullen, supra; Celluloid Manuf'g Co. v. American Zylonite Co., 30 Fed. Rep. 437; Alabastine Co. v. Payne, 27 Fed. Rep. 559; Tie Supply Co. v. McCready, 4 Ban. & A. 588; Boyd v. Cherry, 50 Fed. Rep. 279.

Dyrenforth & Dyrenforth, for defendants.

(1) The remedy of a party to a contract, in case of breach, is against the other party thereto. The law gives this mode of redress, and, though the breach of contract may be induced by a third party, yet the act of breach is not his, and the injured party has no cause of action against such a third party.

(2) By the restriction placed upon the use of its Peninsular machines, the complainant seeks to establish a monopoly of the manufacture of unpatented articles, namely, the button fasteners. This is unconscionable, in restraint of trade, and the alleged contract is void. Machine Co. v. Earle, 3 Wall. Jr. 320; Wilcox & Gibbs Sewing-Mach. Co. v. Gibbens Frame, 17 Fed. Rep. 623; Manufacturing Co. v. Gormully, 12 Sup. Ct. Rep. 632.

Before the expiration of the time allowed for the submission of briefs by defendants' counsel, they withdrew from the case.

JENKINS, District Judge, directed an interlocutory decree to be entered as follows, as upon a default: "An order will be entered overruling the demurrer, and requiring an answer by the first Monday of August. An order will also be entered allowing an injunction pendente lite to issue pursuant to the prayer of the bill."

Subsequently the defendants submitted to a final decree making the injunction perpetual.